UNITED STATES v. GREENE et al.

(District Court, S. D. Georgia, E. D. March 9, 1906.)

CRIMINAL LAW—EVIDENCE—TESTIMONY OF DECEASED WITNESS GIVEN IN PRIOR PROCEEDING.

A proceeding before a commissioner of a Circuit Court of the United States for the removal of a person charged with a crime against the United States to another federal district for trial, in which the accused is present and witnesses are examined and cross-examined, is a judicial proceeding, and the testimony of a witness who is fully examined and cross-examined in the presence of the accused on the issue of probable cause, and which was taken and transcribed by a stenographer and is duly authenticated, is admissible on the subsequent trial of the accused, where the witness has died in the meantime.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1230–1232.]

On Objection of Defendants to the Admission of Evidence. See 115 Fed. 343.

Marion Erwin, U. S. Atty., Alexander Akerman, Asst. U. S. Atty., and Samuel B. Adams and Thomas F. Barr, Sp. Assts. to U. S. Atty. Peter W. Meldrim and William W. Osborne, for defendants.

SPEER, District Judge. The government offers the testimony of four witnesses who are now dead. These witnesses were R. F. Westcott, W. H. Venable, C. H. Van Deventer, and Thomas J. Agnew. They all died during that period in which the accused had absented themselves from the jurisdiction of this court, and while the government was resorting to judicial proceedings in order to secure their return from Canada or other distant jurisdiction to which they had repaired. Had the case been brought to trial at the time when it was originally assigned, all of these witnesses were in life and all might have testified in person. In point of fact, all had testified before John A. Shields, United States commissioner, in the case pending in the Southern District of New York wherein the government sought to secure the return of the prisoners from that judicial district to this district, where the indictments were pending. We are left in no doubt as to that subject.

In the first place, the record of the proceedings before Commissioner Shields makes it indisputable that, not only the prisoners on trial were present, but that they were confronted with the witnesses against them, including these witnesses now dead, and had the most unusual opportunity, not only for the cross-examination of these witnesses, but to introduce evidence in reply to their testimony and any other evidence which might tend to show that there was no probable cause of their guilt and that they ought not to be removed to this district for trial. In addition, this has been judicially ascertained by the District Court of the Southern District of New York. This holding was, in effect, affirmed by the Circuit Judge of that district and was completely and in express terms affirmed by the Supreme Court of the United States on appeal from the decision of the Circuit Judge. Greene v. Henkel, 183 U. S. 249, 22 Sup. Ct. 218, 46 L.

Ed. 177. For a clear understanding of these facts we have but to look to the statement of the case made by the Supreme Court itself. Adopting the declaration of the District Judge as its own, that court recites:

"The commitment by the commissioner and his finding of probable cause have been made after an extremely full hearing of all the evidence offered on both sides. No evidence reasonably pertinent has been rejected."

Not only, as appears from the record now before the court, was the fullest cross-examination had, but objections that irrelevant and incompetent testimony was offered by the government were made and considered by the commissioner, overruled by him, his judgment was not disapproved by the District Judge, and was affirmed by the Supreme Court itself. The District Judge further stated that:

"As respects the finding of probable cause, I have carefully considered the very extended briefs and arguments of counsel, and have examined the voluminous evidence with a view to ascertain whether there was competent evidence before the commissioner sufficient in itself to sustain his finding of probable cause."

And said the Supreme Court in its opinion (183 U. S. 258, 22 Sup. Ct. 222, 46 L. Ed. 177):

"On subsequent hearings before the commissioner, evidence pro and con as to probable cause was given, and also as to the drawing of the grand jury, and that officer decided that 'after full and fair examination touching the charges in the annexed warrant named it appears from the testimony offered that there is probable cause to believe the defendants guilty of the charges therein contained.' And he thereupon for the second time committed the defendants to the marshal's custody to await a warrant of removal to be signed by the District Judge. When the application for the warrant of removal was made to that judge, he held that a proper case was made out and signed the order for removal."

In defining the action of the District Judge in affirming the conclusions of the commissioner, the Supreme Court, Mr. Justice Peckham delivering the opinion, remarks:

"When the judge refers to the testimony taken before the commissioner, although he does in terms say that he expresses no opinion upon the merits, yet he states that upon the evidence before him it is a proper case to be submitted to a jury for trial. That is, in effect, a finding of probable cause."

Nor was there, as insisted by defendants' counsel, any holding of the Supreme Court in this case that, because the indictment from the Southern District of Georgia was produced, the sole question before the commissioner was one of the identity of the prisoners. On the contrary, it is, indeed, interesting to observe that the Supreme Court at that time withheld any declaration as to the conclusiveness of an indictment as evidence of probable cause. It remarked (183 U. S. 260, 22 Sup. Ct. 223, 46 L. Ed. 177):

"It is not a condition precedent to taking action under section 1014 of the Revised Statutes [U. S. Comp. St. 1901, p. 716, which provides for the removal from one federal judicial district to another of persons accused of crime] that an indictment for the offense should have been found."

It states that:

"In this case there was a sworn charge—in other words, a preliminary affidavit—prima facie showing the commission of an offense against the United States, cognizable by the District Court of the United States for the Southern District of Georgia. To substantiate the charge, a certified copy of an indictment found in the Georgia Court was produced, and in addition evidence was given before the commissioner which, as he found, showed probable cause for believing that the defendants were guilty of the offense charged in his warrant."

Subsequently, in Benson's Case, 198 U. S. 1, 25 Sup. Ct. 569, 49 L. Ed. 950, the Supreme Court of the United States amply sustained the views of this court, expressed when these prisoners were permitted for months to resist in New York the process of this court. There the Supreme Court declares that it is scarcely seemly for a committing magistrate to examine closely into the validity of an indictment found in a federal court of another district. In conclusion the court analogizes the proceeding to an adjudication which obtains in case of international extradition, and adds:

"There must be some competent evidence to show that an offense has been committed over which the court in the other district had jurisdiction and that the defendant is the individual named in the charge, and that there is probable cause for believing him guilty of the offense charged."

It follows, then, from this recitation, that the judicial character of the action of the commissioner cannot be questioned. Where there is accusation, arrest, submission of evidence for the prosecution, submission of evidence for the defense, examination, cross-examination, and effective judgment rendered, the proceeding is judicial. A United States commissioner is indeed a judicial officer. In Benson's Case, 198 U. S. 11, 25 Sup. Ct. 569, 49 L. Ed. 950, the court stated that his functions are practically those of an examining magistrate in an ordinary criminal case. He is appointed by the court and is commissioned with certain judicial powers. Section 627 of the Revised Statutes [U. S. Comp. St. 1901, p. 499] provides:

"Each Circuit Court may appoint, in different parts of the district for which it is held, so many discreet persons as it may deem necessary who shall be called 'commissioners of the Circuit Courts,' and shall exercise the powers which are or may be expressly conferred by law upon commissioners of Circuit Courts. This power has been expressly conferred upon him by law."

We turn to section 1014 of the Revised Statutes and we find:

"For any crime or offense against the United States, the offender may * * * by any commissioner of a Circuit Court * * * of any state where he may be found * * * be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense."

The statute provides for the return of copies of the process into the clerk's office of the court, and in cases where the offense is committed in another district makes it obligatory upon the judge of the District Court where such offender on the report of the commissioner is imprisoned seasonably to issue and of the marshal to execute a warrant for his removal to the district where the trial is to be had. The

hearing and investigation under the affidavit and warrant before Judge Shields in New York was therefore obviously a judicial proceeding.

It is, however, insisted by counsel for the defendants, that, although a judicial proceeding, the commissioner had no right to hear any evidence which, to use his expression, "was not embraced in the four corners of the warrant." But this would not be true, even if the commissioner had before him the indictment itself. In the case of Greene and Gaynor v. Henkel, 183 U. S. 249, 22 Sup. Ct. 218, 46 L. Ed. 177, it is stated that the absence of technical averments even in the indictment does not prohibit the commissioner from hearing evidence which supplies such defects and shows probable cause to believe the defendants guilty of the commission of the offense defectively or insufficiently stated therein. A fortiori, would it follow that in case of a preliminary warrant, where an investigation is more general in its character and where more elastic powers are granted the commissioner, that he could hear all material evidence relating to the general topic of crime therein charged against the accused.

It is, however, urged that it is not competent in any criminal case to admit the testimony of a witness given on a previous trial unless the witness himself can be brought before the court. As tersely stated by the assistant district attorney, Mr. Akerman:

"The contention of the learned counsel would perhaps be better founded if the Supreme Court of the United States had not decided the precise question against him."

This decision is found in the Mattox Case, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917. There two witnesses on a former trial, Thomas Whitman and George Thornton, had since died. A transcribed copy of the reporter's stenographic notes was admitted by the court and constituted the strongest proof against the accused. The accused were charged with the capital crime of murder. There it was insisted, as here, that the constitutional provision, that the accused shall be confronted with the witnesses against him, was infringed by permitting the testimony of witnesses sworn upon the former trial to be read. Said the Supreme Court, Mr. Justice Brown rendering the opinion:

"The idea that this cannot be done seems to have arisen from a misinterpretation of a ruling in the case of Sir John Fenwick."

This case was a parliamentary proceeding by bill of attainder. It was the last trial by bill of attainder among the English-speaking people. The charge was high treason. We gather from the luminous and brilliant pages of Macauley's History of England that, though convicted, the prisoner would have been pardoned by William III, had his offense merely comprised a plot for the assassination of that monarch, but the king could not forgive a gross and public insult which Fenwick had offered the queen, the beloved and amiable Mary. There, however, the witness had not died. The wife of the accused had spirited him away, and, notwithstanding the bitterness of the Parliament, with that high regard for law which has characterized the English-speaking race, the testimony was excluded. But in that

case there had been no opportunity for cross-examination on a former trial between the same parties. Nevertheless, the case misled a writer on Evidence to state that it was authority for the proposition that the testimony of a deceased witness cannot be used in a criminal prosecution, and it possibly had the same effect upon the learned counsel for the defendants in this case.

The Supreme Court, however, had declared the rule in England to be clearly the other way, citing a number of notable precedents and an eminent text author. 2 Starkie on Evidence, p. 208. And, said the learned justice delivering the opinion as to the practice in this country, "we know of none. of the states in which such testimony is now held to be inadmissible." Certainly this is true in our own state. In that Code of our state which .has made copious draughts, not only upon the English but the Roman law, whose first and perhaps most illustrious codifier, that noble Georgian, T. R. R. Cobb, has left to the people whom he loved a juridical monument in its ·inestimable pages not less valuable to them than the Code Napoleon to the people of France, we find in section 1001 the provision following, which should satisfy the jurists and the people of this state:

"The testimony of a witness, since deceased, or disqualified, or inaccessible for any cause, given under oath on a former trial, upon substantially the same issue and between substantially the same parties, may be proved by anyone who heard it and who professes to remember the substance of the entire testimony, as to the particular matter about which he testifies."

In some cases, recited by the Supreme Court in the Mattox Case, where witnesses who had testified on a former trial were not dead, but were out of the state, and for similar reasons the testimony has been excluded; but said the Supreme Court:

"Upon the other hand, the authority in favor of the admissibility of such testimony, where the defendant was present either at the examination of the deceased witness before a committing magistrate, or upon a former trial of the same case, is overwhelming."

There are, of course, grave reasons wherever it is possible that the witness who testifies against the accused should be present. These are recapitulated by the Supreme Court in the case just cited. But said that great tribunal:

"But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. To say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot free simply because death has closed the mouth of that witness, would be carrying this constitutional protection to an unwarrantable extent. The law· in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused."

And in the same case it is further declared that:

"The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination."

It adds that:

"All the authorities hold that a copy of the stenographic report of his entire former testimony, supported by the oath of the stenographer that it is a correct transcript of his notes and of the testimony of the deceased witness, such as was produced in this case, is competent evidence of what he said."

See, also, U. S. v. Macomb, Fed. Case No. 15,702, vol. 26; Rice on Evidence, p. 345 et seq.; Starkie on Evidence, 409; Greenleaf on Evidence, 163; Roscoe's Criminal Evidence, p. 66; Reynolds v. U. S., 98 U. S. 145, 25 L. Ed. 244.

There is a learned discussion of the entire topic in Wigmore on Evidence, vol. 2, § 3905 et seq., and many authorities cited, leading the learned writer to the conclusion, as stated in section 1397, that such an argument as that presented by the counsel for the defendants is wholly unfounded. The contention is utterly inconsistent with the exigencies of society, and reduced to its last analysis, might even exclude on the trial the dying declarations of the innocent victim of unprovoked and secret murder or unnamable outrage.

For these reasons the objections are overruled.