**People of the State of Illinois, Plaintiff-Appellee, v. Albert Hall, Defendant-Appellant.**

**Gen. No. 52,952.**

First District, Second Division.

November 25, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Kavanaugh, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant was indicted for the unlawful sale of narcotic drugs, and on November 20, 1967, was tried before a jury, found guilty and sentenced to a minimum term of ten years and a maximum term of ten years

and a day in the Illinois State Penitentiary. This appeal is taken from that judgment.

In this court the defendant argues that his rights were violated when he was restricted in cross-examination concerning the address of the addict-informer who testified in the case; and when the police used an addict-informer to make the alleged purchase of narcotics.

Of necessity the police have established a technique of "controlled sales" in order to apprehend those dealing in the unlawful sale of narcotics. Floyd Flemister, a narcotics user, was searched on May 27, 1967, by members of the Chicago Police Department to verify that he had no narcotics or currency in his possession. He was then given two five-dollar bills and five one-dollar bills after the serial numbers had been recorded, and was taken by by the police to the vicinity of 43rd Street and Vincennes Avenue, in the City of Chicago, where he met the defendant and told him he wanted to buy narcotics. The defendant and another man who was with him walked out of sight and returned in ten or twenty minutes, after which the three went to a restaurant. Officer Winfred Ray, watching from across the street, saw the informer hand money to the defendant; he then changed his vantage point, and from two to five feet away, saw the defendant hand the informer something at the doorway of the restaurant.

The defendant and the man with him (Emanuel Edwards) then went into a food store for a few minutes while the informer returned to the corner where Officer Crosier was standing (there were three policemen at the scene). Officer Crosier opened the tinfoil package the informer gave him and found a white powder; he then signaled Officer Ray, who arrested the defendant and Edwards. A subsequent chemical analysis showed the powder to be heroin.

During the time between the sale and the arrest, the suspects had entered three stores. The third officer,

118

Terry Cornell, checked the stores and found one of the prerecorded five-dollar bills in one store; a search of the defendant's person disclosed the five prerecorded one-dollar bills.

In the defendant's trial the informer stated that his real name was Floyd Flemister, but that he used the name of Albert Cross; that he was a special employee of the Chicago Police Department and had twice been convicted of felonies prior to this time. On cross-examination he admitted that he had received money from the police in payment; that he was a narcotics addict, and performed odd jobs to support his habit. He stated that he and the defendant knew one another from the neighborhood, and that the defendant knew him by his nickname of "Blo." He testified that he had always lived in Chicago and was presently separated from his wife and children. When asked where he lived the following colloquy occurred:

> Q. "Where do you live, Mr. Cross?"
> Mr. Motherway (Assistant State's Attorney): "Object."
> The Court: "What is the basis of that objection?"
> Mr. Motherway: "Ray case among other things, your Honor, plus its irrelevancy."
> The Court: "All right. Objection sustained."

Based on this ruling of the trial court, the defendant argues that his rights under the Sixth Amendment to the Federal Constitution were violated in that he was denied his right to effectively cross-examine the informer. He further argues that when the addict-informer takes the stand there are no "protected areas of inquiry," and that United States Supreme Court opinions have specifically held that the defense is entitled to elicit the place of residence of the witness.

██ ██ In Alford v. United States, 282 US 687, 689, the court agreed with defense counsel that "the jury

was entitled to know 'who the witness is, where he lives and what his business is.' " We do not feel, however, that this statement was meant to be available to every defendant in every criminal prosecution, regardless of the facts. We believe the intent of the opinion is that the defendant is entitled to place the witness in his proper setting to subject the weight and credibility of the witness' testimony to scrutiny by the finder of fact. (See pages 691–692 of Alford.) In that case the government witness was in the custody of federal authorities, and the defense wanted to show that his testimony "was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecution." (At page 693.)

In the instant case the jury had learned considerable detail about the addict-informer who had been adequately placed in his proper setting.

In Smith v. Illinois, 390 US 129, the United States Supreme Court reversed a criminal conviction on the ground that the defendant had been denied his right to cross-examination and confrontation when the trial court protected a witness from being discredited. As in the case before us, the witness was an addict-informer who testified about his alleged illegal purchase of narcotics from the defendant. On cross-examination the trial court had sustained objections to questions as to the real name of the witness and his address. The court said at page 131 that "when the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives." (See Pointer v. Texas, 380 US, at 404.)

In Smith the police officers could not corroborate the essential aspects of the informer's testimony, so the relative credibility of the petitioner and the informer was the critical question in the trial. In the instant case

the officers did corroborate the testimony of the informer, but we do not feel that this distinction is sufficient to justify a different result. It is true that the credibility of the informer in the instant case was still an issue, since his testimony was certainly the most damaging part of the prosecution's case against the defendant. Although the officers witnessed the transaction they did not hear what was said; the informer alone could testify as to the conversation between himself and the defendant, and thus his credibility was definitely at issue. At the trial the informer testified as follows:

> There is a livery cab stand at 4258 Vincennes. I saw Mr. Hall there and a man named Emanuel Edwards. I told them I wanted to cop. This means to buy narcotics. Then I waited at the northwest corner of 43rd and Vincennes for the two to return, some 15 to 20 minutes. They returned, and I asked them if it was ready and they said yes.

██ He also testified that he handed the defendant $15 and received in return a tinfoil package of narcotics. It cannot be said that his testimony was not an important part of the State's case. Under these circumstances we find applicable to this case the statement in Smith that when credibility is in issue, the defense is entitled to have the informer give his real name and address.

In United States v. Garafolo, 385 F2d 200 (7th Cir), the services of an informer had been used in obtaining a conviction against Garafolo for the unlawful sale of narcotic drugs. The informer, Haney, testified at the trial. At page 206 of the opinion the court made the following statement:

> In the instant case, Haney was not permitted to testify concerning *his address at the time of trial*, but was permitted to testify that his address at the

time of the first heroin purchase from appellant was 7104 Union Street, Chicago, Illinois. Agent Cook testified that after the third, fourth, and fifth purchases from appellant, he drove Haney to 71st and Union Streets; from this it could reasonably be inferred that Haney's residence continued at the Union Street address. Other aspects of Haney's background, including his prior murder conviction, his prior arrest for carrying a gun without a permit, his employment record, and his arrest for sale of narcotics shortly before he began cooperating with narcotics agents, were brought out on direct and cross-examination. Defense counsel were permitted to inquire whether Haney received compensation from the Government, whether he had used an alias, and whether he had been promised leniency in return for his cooperation. In light of the wide latitude allowed on cross-examination, the trial court's refusal to permit cross-examination concerning Haney's residence at the time of trial was not prejudicial error. Haney was sufficiently identified with his community to enable appellant to investigate his reputation for truth and veracity in that community. His personal character was deeply probed by defense counsel.

The court concluded that defendant had not been denied his right of cross-examination and confrontation when he was not permitted to have the informer state his address as of the time of trial.

That case was decided October 11, 1967; the opinion in Smith v. Illinois, supra, was not filed until January 1968. The United States Supreme Court took Garafolo on a writ of certiorari, vacated the judgment of the Circuit Court and remanded with instructions to reconsider the case in the light of Smith v. Illinois, supra.

On remand the Federal Circuit Court of Appeals entered a per curiam order which can be found at 396 F2d 952. In that order the court said that on further consideration of the record and consistent with the mandate of the Supreme Court, the judgment of conviction was reversed and the cause remanded to the District Court for a new trial. It would appear that the Seventh Circuit of Appeals concluded that Smith v. Illinois, supra, required a reversal of Garafolo's conviction.

■ It is apparent that the informer in Garafolo gave more information about himself and his address than did the informer in the case before us. It would seem that a reversal would be required in the instant case; however, in reversing and remanding for a new trial, it is well to mention two opinions of the Seventh Circuit, Federal Court of Appeals, which were handed down following the Smith and Garafolo opinions in the Supreme Court. Both cases recognize that where the record shows the life of the witness would be endangered by the disclosures sought, the trial court may properly sustain objections and not permit the requested information to be given.

■ ■ In United States v. Varelli, 407 F2d 735 (7th Cir), the court distinguished Garafolo by noting at page 750 that there was no evidence as to the witness' life being in danger in Garafolo. In the instant case there is no showing of any danger to the life of the informer and therefore, the objection to the disclosure of his address should have been overruled. In United States v. Palermo, 410 F2d 468 (7th Cir), the court went into great detail in this regard, and said at page 472:

> This Court agrees with Justice White (concurring opinion in Smith) that where there is a threat to the life of the witness, the right of the defendant to have the witness' true name, address and place

of employment is not absolute. United States v. Varelli, 407 F2d 735 (7th Cir 1969). However, the threat to the witness must be actual and not a result of conjecture. Shaw v. Illinois, 394 US 214, 89 S Ct 1016, 22 L Ed2d 211 (1969). The government bears the burden of proving to the district judge the existence of such a threat.

■ This court is not so far removed from the realities of life that it can fail to take judicial notice of the present trends and of the fact that in many cases the informer might be in danger of his life if he testifies as to certain matters. We think that the rule set out points to a practical and sensible solution of the problem. The information with reference to the actual danger to the informer's life should be disclosed to the trial judge who may then make a determination as to whether or not the witness should be compelled to state his true name, present address and place of employment. The trial court's determination will, of course, be subject to review. Such a procedure will assure to the defendant his right of cross-examination, but will prevent unnecessary disclosures which would serve no proper purpose but would only place the life of the informer in jeopardy.

The judgment of the Circuit Court is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion.

Judgment reversed and cause remanded.

LYONS, P. J. and BURKE, J., concur.