**UNITED STATES ex rel. Melvin HAYWOOD, Petitioner,**

v.

**Dennis WOLFF, Warden, Joliet Correctional Center, Respondent.**

**No. 79 C 1471.**

United States District Court, N. D. Illinois, E. D.

April 11, 1980.

Sam Adam, Chicago, Ill., for petitioner.

Neal B. Goodfriend, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM

LEIGHTON, District Judge.

The issue in this habeas corpus proceeding is whether petitioner's state court convictions were obtained under circumstances that deprived him of rights secured by the Sixth and Fourteenth Amendments to the federal constitution. Review of the trial record compels this court to conclude that petitioner's trial and convictions deprived him of fundamental constitutional rights. Therefore, his petition is granted; but the writ will not issue for a period of 120 days within which the State of Illinois shall give petitioner a new trial. In the event this is not done, the court will order him released either from respondent's custody or from that of any Illinois official to whom he is transferred. The following are the facts and the controlling principles of law which compel the court to its conclusion.

I

Sometime between 2:00 and 2:30 a. m. on July 2, 1972, three men entered an apartment at 1448 East 68th Street in Chicago and joined others who were there engaged in conversation while listening to music. Suddenly, one of the three called out "Now!" Shooting of guns erupted. By the time it subsided, two men and a woman were dead. Two other men, including Charles Stanton, were wounded. The police, responding to a call took Stanton and the other man to a hospital where they were questioned that morning and on several occasions in the days that followed. Photographs were shown to Stanton, and from what he later told police investigators, a warrant was issued for the arrest of petitioner Melvin Haywood.

The warrant, however, was not executed until June 12, 1974, almost two years later, when petitioner was arrested. He was held without bond and not subjected to a lineup or other identification proceeding until July 11, 1974 when he was taken to court for a preliminary hearing. This proceeding, under Illinois law, was limited to a showing by the prosecution of probable cause to hold petitioner for trial. The laws of Illinois, the criminal code and rules of the state supreme court prohibited discovery prior to indictment. Consequently, prior to or for the purpose of the preliminary hearing, petitioner was not entitled to discover any statement Stanton made to the police after the shooting, or any police report which may have described his conduct or what he said in connection with the investigation.

In the courtroom, petitioner sat at a counsel table, the only Negro seated there. Stanton was brought from the back of the room, took the witness stand, and testified for the prosecution. Asked if he had ever seen petitioner before, he answered in the affirmative, saying that it was petitioner who shot him during the early morning hours of July 2, 1972, and who also shot and killed the woman, his girlfriend. After responding to other general questions, Stanton was then cross-examined by petitioner's counsel.

He was asked whether prior to the morning of July 2, 1972 he had ever seen the petitioner; he said he had not. Then, among other questions, he was asked (1) his present address; (2) whether he had seen a picture of petitioner since July 2, 1972; (3) whether he had described to the police the person who shot him and his girlfriend; (4) what he told the police when they arrived and found him shot; (5) whether he had ever described his assailant to police investigators; and (6) whether he had ever described the color of his assailant to the police. The assistant state's attorney in the case objected on the ground that the questions sought discovery. His objections were sustained. Cross-examination was concluded; Stanton was not questioned further. He was the only witness called to testify; he was the only person produced by the state who identified petitioner as the man who shot and killed the woman in the apartment on July 2, 1972 and who shot and wounded him. Probable cause was found and a short time later the Cook County grand jury returned a five count indictment that charged petitioner with three murders (the killing of the two men and the woman), attempt to murder Stanton, and commission of aggravated battery on him.

Stanton, however, did not live to be a witness for the state in petitioner's trial. Sometime after the preliminary hearing, he died of causes unrelated to the events that led to the prosecution. Under Illinois law, petitioner became entitled to pretrial discovery after the indictment. His counsel obtained copies of police reports which disclosed what Stanton told police investigators on the morning of July 2, 1972, and later when he was interviewed concerning the shooting. Prior to the case being called for trial, petitioner's counsel learned that the state was going to use as its evidence the transcript of Stanton's preliminary hearing testimony. He immediately filed a motion to prohibit the state from doing so, and to suppress Stanton's identification at the preliminary hearing.

The grounds alleged were that the state had utilized "highly suggestive photograph-

ic and in-court identification procedures without notice to [petitioner] or his counsel [which] resulted in a suggestive and faulty identification of [petitioner] by Charles Stanton and thus violated [his] right to due process of law under the Illinois and United States Constitutions." The circumstances of petitioner's arrest and of his in-court identification by Stanton were recited. Based on these facts, petitioner contended that admission of the transcript of Stanton's preliminary hearing testimony as evidence in his trial would violate his right to confront and cross-examine witnesses against him secured by the Sixth Amendment to the United States constitution, and deprive him of due process of law under the Fourteenth Amendment. Petitioner alleged "that [he] was not given a fair and reasonable opportunity to cross-examine Charles Stanton, nor was [he] given an opportunity to fairly test the identification by Charles Stanton of [him] as the perpetrator of the shooting . . . on July 2, 1972." The state did not answer the motion; thus it did not deny the factual allegations. Nonetheless, petitioner's counsel brought the motion before the court for an evidentiary hearing prior to trial.

When that hearing was called, petitioner's counsel described the evidence he was going to present. He said he would be a witness and testify to the fact that the preliminary hearing judge before whom Stanton had appeared enforced a policy of restricting cross-examination of witnesses who testified for the prosecution. Counsel stated that he learned of this policy from the cases in which he was a defense lawyer; on these occasions, he saw the preliminary hearing judge restrict cross examination and sustain the state's position against making available to defendants police reports or discovery materials. He said the policy was consistent with state law; that it was applied in petitioner's preliminary hearing and thus deprived him of the right to confrontation of witnesses, to cross-examine them, as guaranteed by both state and federal constitutions.

Then, referring to a number of police reports which he said the prosecution had now given petitioner but which he did not have at the preliminary hearing, counsel described a number of inconsistencies between what Stanton told police investigators after the shooting and the testimony he gave in the hearing when he identified petitioner as the person who shot him and killed the woman in the apartment. For example, he pointed to the fact that Stanton testified he had never seen petitioner prior to the morning of July 2, 1972 in the apartment. The police reports, however, revealed that when Stanton was questioned by police investigators after the shooting, he said he knew the men who entered the apartment because they were from Gary, Indiana, and he had seen them before. Petitioner's counsel asserted that had he access to the police reports at the preliminary hearing, he would have cross-examined Stanton about this obvious inconsistency between his testimony and what he told the police officers. Moreover, counsel stated that petitioner had never been in Indiana. Therefore, had he known of the statement to the police that the men were from Gary, he would have cross-examined Stanton about it, and then he would have impeached him with evidence proving his client had never been in Indiana.

Petitioner's counsel then proceeded to compare Stanton's statements, as reflected in the police reports, with his testimony as shown in the transcript which the state was seeking to use in petitioner's trial. There were, according to petitioner's counsel, twelve general subject areas concerning which there were inconsistencies between what Stanton told police investigators about the shooting and what he told the preliminary hearing judge under oath. These inconsistencies, counsel pointed out, would have been subjects about which he would have cross-examined Stanton, had the police reports been available. Counsel argued that the preliminary hearing judge's policy restricting cross-examination, and the impact of Illinois law denying discovery to criminal defendants before indictment, had the effect of depriving petitioner of his constitutional right to be confronted by wit-

nesses against him and to cross-examine those witnesses.

Counsel pointed out that after Stanton was questioned during the morning of July 2, 1972 and described what had happened in the apartment, a warrant issued for the arrest, not of petitioner, but of a man named Daniels who was also wounded in the shooting. Daniels, although identified by Stanton, never was prosecuted because investigation showed he was not one of the men who participated in the shooting on the morning in question. The police reports also showed that Stanton positively identified a photograph of a man named Willie Bedgood and said he was one of the offenders. Bedgood was indicted and tried, with Stanton testifying for the prosecution, but he was acquitted. The reports also showed that Stanton identified a man named Anthony Reed as a person who looked like one of the offenders. Reed was never prosecuted because police investigation showed he was not involved in the crimes. Thus it appeared that although Stanton told police investigators that three men entered the apartment and precipitated the shooting, he identified four men as the offenders. Petitioner's counsel pointed out to the trial judge that had he seen the police reports prior to the preliminary examination hearing, he would have cross-examined Stanton concerning all of the areas of apparent inconsistency between the testimony he gave for the state and what he told police investigators after the shooting.

During presentation of his outline of the evidence, petitioner's counsel was interrupted by the trial judge who said it was not necessary for him to testify because his statement for the record was adequate. The assistant state's attorney in the case did not object to this ruling. Counsel then told the trial judge that he had subpoenaed the police officers who questioned Stanton, and he was going to call them to testify concerning the police reports they had prepared. The officers, as the record shows, were not in court because of obligations elsewhere. It was understood, however, that they were available for testimony. Having received this assurance, petitioner's

counsel ended his presentation of the motion, and the assistant state's attorney responded.

He did not contradict the statement of his opposing counsel that in the preliminary hearing court the judge there adhered to a policy which restricted the cross-examination of state witnesses. He did not deny that the preliminary hearing judge strictly construed and enforced Illinois law which prohibited defendants' access to discovery prior to indictment. Instead, he argued that in the preliminary hearing court, the judge asked petitioner's counsel whether he was making a motion to suppress identification, and counsel said he was not. The state's attorney contended that if a motion to suppress had been made, greater latitude in cross-examination of Stanton would have been available.

Then the state's attorney turned to the police reports, acknowledged their existence, did not deny they contained statements inconsistent with Stanton's testimony, but insisted that they did not support the construction placed on them by petitioner's counsel. He said that while it was true Stanton had identified three other men as offenders in the case, he did not identify petitioner as the only man who participated in the shooting. He said the three men were identified as the other participants in the killing of the three persons and the wounding of Stanton and Daniels. He asked the trial judge to admit all of the police records as evidence in the case. Petitioner's counsel agreed. The record of the proceedings was thus supplemented; and the attorney for the state concluded his presentation with the argument that proceedings in the preliminary hearing court did not deprive petitioner of his right to be confronted with witnesses against him, and to cross-examine them, as guaranteed by the Sixth Amendment to the United States Constitution. After a response by petitioner's counsel, hearing of the motion was concluded. The trial judge then said that he had read the transcript of the preliminary hearing, and had examined the case cited to him by the assistant state's attorney. He

ruled that "in accordance with the law that has been recited there, the accused be ·afforded an opportunity to cross-examine the witness . . . I would say that was afforded in that particular transcript, and, therefore, it should be admitted [sic]."

A week later, and prior to trial, that phase of the motion which sought suppression of Stanton's identification testimony was brought before the trial judge for hearing. Petitioner and his counsel testified. They recounted the circumstances in the preliminary hearing at which Stanton identified defendant as the man who shot him and killed the woman. Petitioner described how Stanton was brought to the witness stand from the rear of the courtroom, and without looking at him, identified him as the offender. He said he was the only Negro seated at the counsel table during the in-court identification proceeding. After he was cross-examined, his counsel testified to the fact that he had no notice of the state's intention to turn the preliminary hearing into an identification proceeding. He told the trial judge that when Stanton identified petitioner, it did not appear he was looking at him. Counsel was then cross-examined; thereafter, he was subjected to further interrogation and hearing of petitioner's motion to suppress Stanton's identification testimony was concluded.

The trial judge then heard arguments and found that, consistent with a number of decisions of the Illinois appellate court, Stanton's identification of petitioner at the preliminary hearing had a prior independent origin. He reviewed the holdings of the cases and applied the rule that where an in-court identification was based on an earlier observation of an alleged perpetrator at the time of the crime, the in-court identification was admissible. Reading the transcript, the trial judge concluded that Stanton had an opportunity, in the apartment in question on the morning of July 2, 1972, to have observed the man he said was petition-

·er. Therefore, he denied petitioner's motion to suppress. Thus the transcript containing Stanton's testimony at the preliminary hearing, the only evidence that connected petitioner with five crimes charged in the indictment, became admissible at his trial.

A short time thereafter, petitioner was brought to trial before a jury. Three police officers who investigated the shooting testified. When the prosecution disclosed it was going to introduce the transcript of Stanton's preliminary hearing testimony, petitioner's counsel renewed his objections, all based on constitutional grounds.[1] They were overruled, and the trial judge explained to the jury that "the evidence which is about to come to you next is a witness who is legally unavailable at this particular time because he is deceased. He is deceased not by reason of this incident, but because of other causes that he died from, and as a result, his presence cannot be obtained in this courtroom at this time and it will become necessary, and the Court has permitted his former testimony to be read to you at this time." Then, in open court, petitioner's counsel stipulated that if the official court reporter who transcribed Stanton's testimony were called as a witness, he would testify that the transcript was a true and accurate reproduction of the notes he made of the preliminary hearing.

The assistant state's attorney referred to the transcript, and told the jury "that if Mr. Charles Stanton were to testify, this would be the testimony he would give, this being the same testimony recorded by [the court reporter] at the Preliminary Hearing in this cause." The transcript was then read to the jury. Other witnesses were called, all but one of them police officers who had investigated the shooting. Petitioner put on his defense, and the prosecution rebutted petitioner's evidence. The jury was instructed; but it was not informed about the

1. Petitioner's counsel also objected to a ruling by the trial judge which permitted the state to excise from the transcript each instance where the assistant state's attorney supported his objections to the cross-examination of Stanton with the statement that "it goes to the nature of discovery." In addition, two other excisions were made because, according to respondent's explanation in the proceedings, they "dealt with objections and arguments of counsel."

nature of a preliminary hearing, or in what manner the transcript, as evidence, differed from the confrontation testimony of a witness who comes into court in person. Petitioner was convicted of all the counts in the indictment. After post-trial motions were overruled, he was sentenced to serve not less than 100 years nor more than 200 years for each of the three murders and not less than 10 nor more than 20 years for the attempt to murder Stanton, all of the sentences to run concurrent with each other.[2]

He appealed to the Illinois appellate court where, in a brief on his behalf, it was argued that use of the transcript as substantive evidence in his trial deprived him of the right to be confronted with witnesses against him, and cross-examine them, as guaranteed by the Sixth Amendment; and denied him due process of law secured by the provisions of the Fourteenth Amendment to the federal constitution. The appellate court, relying on a number of Illinois reviewing court decisions, rejected the argument and affirmed the convictions. Leave to appeal was denied by the Supreme Court of Illinois; certiorari was denied by the Supreme Court of the United States. His available state remedies exhausted, petitioner then filed this petition for a writ of habeas corpus.

## II

The petition is in the form which the rules of this court require when state prisoners seek federal habeas corpus relief. In the appropriate sections, petitioner's prosecution and convictions are described; then, petitioner sets forth three grounds for his claim that respondent was holding him in unlawful custody: (1) deprivation of his Sixth Amendment rights by use in evidence against him of the preliminary hearing transcript containing Stanton's testimony; (2) use of the prejudicially suggestive identification of him by Stanton; and (3) deprivation of his Sixth Amendment right to call witnesses in his defense at his trial.

Each is buttressed by factual allegations. Petitioner describes the incidents which gave rise to the charges against him: Stanton's statements as shown in the police reports; petitioner's arrest almost two years after the shootings in the apartment; the preliminary hearing at which Stanton testified and identified petitioner; the restrictions on cross-examination, together with denial of discovery prior to indictment; the identification and the suggestive procedures utilized by the state both before and during Stanton's testimony; and the fact that there was evidence in the record which disclosed that Stanton, in the trial of Willie Bedgood, had described the lighting in the apartment differently than he did in the preliminary hearing, and that Stanton was ingesting drugs at the time of the shooting, thus presenting impediments to his identification of petitioner in the preliminary hearing having an independent origin.

This court, pursuant to Rule 4, Rules Governing § 2254 Cases, 28 foll. § 2254, examined the petition and concluded that "it allege[d] facts which, if true, entitle[d] petitioner to relief." Accordingly, he was granted leave to proceed in forma pauperis, and it was ordered that his petition be answered. Respondent has done so, admitting exhaustion of state remedies, filing therewith the record of the state court proceedings, attaching as exhibits the state's abstract and brief in petitioner's appeal, and stating that "[a]s more fully set out in the attached Memorandum of Law, respondent believes that the petitioner is not entitled to federal habeas corpus relief." The memorandum referred to, in its opening paragraph, adopts the statement of facts contained in the state's brief as appellee in the Illinois appellate court. None of petitioner's allegations underlying the grounds he asserts for habeas relief in this court are denied or in any manner controverted in that brief.

Therefore, the court reviewed the proceedings as required by Rule 8 governing

---

**2.** Although the jury found defendant guilty of each of the five counts in the indictment, for reasons not clear from the trial court record, no sentence was imposed for the offense of aggravated battery.

state prisoner petitions, and decided that the parties should have the opportunity to introduce evidence on any factual issue which, despite the state of the pleadings, they may wish to raise in the case. Accordingly, the cause was called for a status report; but when the parties appeared, they were of the view that no evidentiary hearing was necessary. Respondent, represented by an assistant attorney general of Illinois, stated that he was in agreement with the facts as they had been alleged by petitioner. He agreed that the petition, his answer as the court has described it, and the briefs of the parties, presented the issue to be resolved: that is, whether use of the preliminary hearing transcript of Charles Stanton's testimony as substantive evidence in petitioner's trial deprived him of his Sixth Amendment rights, and denied him due process of law secured by the Fourteenth Amendment. Resolution of the issue requires that this court examine the state trial record and determine whether petitioner was afforded an adequate opportunity to cross-examine Stanton which, consistent with the Sixth Amendment guarantees, made the preliminary hearing transcript admissible in the trial before the jury.

### III

### A

The Sixth Amendment right of a criminal accused to be confronted with witnesses against him is a protection of the person which the Fourteenth Amendment makes obligatory on the states. *Pointer v. State of Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965). It is a fundamental guarantee, "a right long deemed so essential for the due protection of life and liberty that it is guarded against legislative and judicial action by provisions in the constitution of the United States and in the constitutions of most if not all of the states comprising the Union." *Kirby v. United States*, 174 U.S. 47, 56, 19 S.Ct. 574, 577, 43 L.Ed. 890 (1899). This right is an important one when a criminal defendant seeks the opportunity to cross examine a

witness who appears against him, a procedural device which is "one of the safeguards essential to a fair trial." *Alford v. United States*, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). Indeed, both the right to be confronted with witnesses and the right to cross-examine them "[h]ave ancient roots. They find expression in the Sixth Amendment which provides that in all criminal cases the accused shall . . . 'be confronted with witnesses against him.'" *Greene v. McElroy*, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). All of the more recent decisions of the Supreme Court support the view that cross-examination is the essential right secured by the confrontation clause. *Cf. Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *see California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

The primary object of this clause of our federal constitution "was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony, whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895); *see Stewart v. Cowan*, 528 F.2d 79 (6th Cir. 1976). This guarantee did not originate with the Sixth Amendment, but was a common-law right having recognized exceptions. *Salinger v. United States*, 272 U.S. 542, 548, 47 S.Ct. 173, 175, 71 L.Ed. 398 (1926).

One such exception was the practice in England, long before the Sixth Amendment was adopted in 1789, which allowed the testimony of a witness in a first trial to be used in a second one, if attendance of the witness could not be secured. Testimony

given at a preliminary examination could be used at the trial under the same condition, if the accused was present and had an opportunity to cross-examine the witness. *Rex v. Eriswell* (1790) 3 T.R. 722, 100 Eng. Reprint 823; *Rex v. Jolliffe* (1791) 4 T.R. 285, 100 Eng.Reprint 1022; *see* Annot. 15 A.L.R. 495, 497–501. This became the law in America early in the history of the Union, *see Magill v. Kauffman*, 4 Sergeant & Rawle 317, 8 Am.Dec. 713 (1818); 1 Greenleaf Evid. § 163; 1 Bishop Cr.Proc. § 527; it was applied in state as well as in federal criminal cases, *see United States v. Wood*, 3 Wash.C.C. 440, Fed.Cas.No.16,756 (1818); *United States v. Greene*, 146 Fed. 796 (D.C. Ga.1906); *Summons v. State*, 5 Ohio St. 325 (1856). And consistent with this general rule of law, it was held in *Mattox v. United States*, 156 U.S. 237, 244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895), that where after testifying in the first trial witnesses for the government die, "[t]he substance of the [Sixth Amendment] constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." Therefore, "a correct transcript of [the reporter's] notes and of the testimony of the deceased witness . . . is competent evidence of what he said." 156 U.S. at 244, 15 S.Ct. at 340.

■ As the rule has been applied in the context of Sixth Amendment rights, however, the earlier testimony of a witness is admissible in evidence only where a two-pronged predicate is established: "(1) adequate opportunity for cross-examination at the previous trial or hearing, and (2) the witness is shown to be unavailable to testify." *United States v. Amaya*, 533 F.2d 188, 191 (5th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *United States v. Edwards*, 469 F.2d 1362 (5th Cir. 1972); 3 Wharton's Criminal Evidence § 650 (13th ed.). Of course, in this case it is not questioned that Charles Stanton's death made him "unavailable as a witness." *Cf. Depew v. Hanover Ins. Co.*, 438 F.Supp. 358, 359 (E.D.Tenn.1977); *see Shaw v. United States*, 1 F.2d 199 (8th Cir.

1924); *Baldwin v. United States*, 5 F.2d 133 (6th Cir.), *cert. denied*, 269 U.S. 552, 46 S.Ct. 17, 70 L.Ed. 407 (1925). It is the first prong of the predicate that is at issue.

In *Pointer v. State of Texas*, 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965), when the Supreme Court first declared that the Fourteenth Amendment made the confrontation clause obligatory on the States, it observed that if the preliminary hearing transcript there involved "[had] been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine," no constitutional violation would have occurred. Three years later, in *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Court had to decide whether the Sixth Amendment right of a state prisoner was violated by the admission in evidence of a preliminary hearing transcript containing the testimony of a witness who at the time of trial was a federal prisoner, the state not having attempted to obtain his presence in court. In holding that there was a constitutional violation, Mr. Justice Marshall first relied on the language of *Mattox*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339–340, 39 L.Ed. 409 *infra* at 18. Then, quoting from *Pointer*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, he emphasized that:

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. 390 U.S. at 721, 88 S.Ct. at 1320.

When in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Court was asked to decide whether admission of hearsay under a California hearsay rule statute violated the confrontation clause of the Sixth Amendment, Mr. Justice White, for the majority, turned to the preliminary hearing testimony there involved

and said it was admissible, as far as the constitution was concerned, because Porter, the witness, was under oath; and the accused "had every opportunity to cross-examine [him] as to his statement . . . ." 399 U.S. 149, 165, 90 S.Ct. 1930, 1938. Therefore, it can be seen that on each occasion in which the Supreme Court has discussed the right to cross-examine as a predicate for using a preliminary hearing transcript as substantive evidence, it has said that there must be "a complete and adequate opportunity to cross-examine", *Pointer*, 380 U.S. 400, 407, 85 S.Ct. 1065, 1069–70; or, there must be "an opportunity, not only of testing the recollection [but of] sifting the conscience of the witness," *Barber*, 390 U.S. 719, 721, 88 S.Ct. 1318, 1320 or the record must show "every opportunity to cross-examine . . . ", *Green*, 399 U.S. 149, 165, 90 S.Ct. 1930, 1938. At the same time, the Court "made clear that 'the right of an accused to be confronted with witnesses against him must be determined by the same standards whether the right is denied in a federal or state proceeding . . . .'" *Smith v. State of Illinois*, 390 U.S. 129, 133, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968).

■ Under Illinois law, the scope and purpose of the preliminary hearing at which Stanton testified were to ascertain whether the crimes charged had been committed and, if so, whether there was probable cause to believe they were committed by petitioner. *People v. Morris*, 30 Ill.2d 406, 197 N.E.2d 433 (1964); *United States ex rel. Bonner v. Pate*, 430 F.2d 639 (7th Cir. 1970) *cert. denied*, 401 U.S. 915, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971). It was not intended to be a discovery proceeding; and cross-examination of Stanton could not extend beyond the scope of direct, with further interrogation restricted "to show interest, bias, prejudice or motive of the witness to the extent that these factors [were] relevant to the question of probable cause." *People v. Horton*, 65 Ill.2d 413, 3 Ill.Dec. 436, 438, 358 N.E.2d 1121, 1123 (1976); *see* S.H.A. 1973, ch. 110A, § 411. For these reasons, petitioner could not cross-examine Stanton concerning his residence, a restriction which

the Supreme Court of the United States and reviewing courts of Illinois have held is an unconstitutional limitation on the right to cross-examine a witness. *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *People v. Hall*, 117 Ill.App.2d 116, 253 N.E.2d 890 (1969); *compare People v. Finch*, 47 Ill.2d 425, 266 N.E.2d 97 (1970); *see* Annot. 85 A.L.R.3d 541. And because of the restrictions on cross-examination which the preliminary hearing judge was bound to enforce, crucial objections to questions petitioner asked Stanton were sustained so that his recollection could not be tested, nor could his conscience be sifted concerning any inconsistency between what he said under oath and what he told investigating police officers about the events he described as having occurred in the early morning hours of July 2, 1972 when, according to his preliminary examination testimony, petitioner, in the apartment in question, shot and killed three persons, and wounded him.

In the trial court, when the motion was made to prevent the state from using the preliminary hearing transcript, none of the facts alleged by petitioner were disputed; and after hearing the motion, no finding was made by the trial judge inconsistent with petitioner's factual claims. The trial judge merely referred to a case on which the state was relying; and after making a somewhat unintelligible statement concerning the law, ruled that the transcript was admissible. When the Illinois Appellate Court reviewed petitioner's convictions in *People v. Haywood*, 60 Ill.App.3d 236, 17 Ill.Dec. 329, 376 N.E.2d 328 (1978), it accepted as true all that petitioner had alleged and proved when he moved to suppress the preliminary hearing transcript, proof which showed the restrictions placed on his cross-examination of Stanton. This included petitioner's showing that the applicable Illinois statute, and the rule of the state's supreme court which provided that discovery rules "shall not be operative prior to

or in the course of any preliminary hearing" had the effect of restricting cross-examination of Stanton when he gave his crucial testimony. The court stated the rule long recognized in Illinois that "[t]he transcript of testimony given at a preliminary hearing is admissible into evidence at a later trial only if the witness is presently unavailable and an adequate opportunity to cross-examine the witness was provided at the earlier proceeding." 17 Ill.Dec. at 334, 376 N.E.2d at 333. *See People v. Beathea,* 24 Ill. App.3d 640, 321 N.E.2d 458 (1974); *People v. Horton,* 65 Ill.2d 413, 417, 3 Ill.Dec. 436, 439, 358 N.E.2d 1121, 1124 (1976).

■ Then following a review of the extent to which Stanton was cross-examined by petitioner's counsel, the appellate court concluded that "we found no significant limitation upon the free exercise of the right to cross-examine . . . [petitioner] was afforded an opportunity to effectively cross-examine Stanton." 17 Ill.Dec. at 335, 376 N.E.2d 328 at 334. This ruling, and the one by the trial court when the preliminary hearing transcript was admitted in evidence, were conclusions of law by the respective state courts. *See United States ex rel. Sullivan v. Cuyler,* 593 F.2d 512, 518 (3rd Cir.) *cert. denied,* 444 U.S. 823, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979). As such, they may not be given binding weight in this federal habeas corpus proceeding. *Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963); *see Mason v. Balcom,* 531 F.2d 717, 721 (5th Cir. 1976). They do not reflect correct applications of the standards for the protection of Sixth Amendment rights which were pronounced in *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); and *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Indeed, they appear to be inconsistent with what was said by the Supreme Court of Illinois in *People v. Horton,* 65 Ill.2d 413, 3 Ill.Dec. 436, 358 N.E.2d 1121 (1976):

> In the absence of discovery procedures and in view of the limited nature of the evidence which may be introduced at a preliminary hearing, the question whether adequate opportunity to cross-examine had existed at the preliminary hearing . . . may not depend in its entirety on what transpired at the hearing. Adequate opportunity to cross-examine means an opportunity to effectively cross-examine, and merely providing an opportunity to cross-examine at the preliminary hearing is not *per se* adequate opportunity, 3 Ill.Dec. at 439, 358 N.E.2d at 1124.

They also appear to be inconsistent with the views of Mr. Justice Downing articulated in *People v. Behm,* 49 Ill.App.3d 574, 7 Ill.Dec. 475, 364 N.E.2d 636 (1977), who quoted the language from *Horton* and concluded that mere "opportunity to cross-examine, in and of itself, is insufficient" in determining whether in a given case an accused in a preliminary hearing was afforded a full opportunity to confront and cross-examine a witness. 7 Ill.Dec. 475, 479, 364 N.E.2d 636, 640. Justice Downing went on to ask:

> What, then, is an adequate opportunity to cross-examine? Although our research has not revealed a standard which is universally applicable, one central theme has emerged. No undue restrictions should be placed upon defendant's right to cross-examine (citing cases); and defense counsel should be allowed to cross-examine the witness competently, vigorously, and comprehensively (citing cases). 7 Ill.Dec. at 479, 364 N.E.2d at 640.

■ In this court's judgment, petitioner was not afforded an adequate opportunity to cross-examine Stanton in the preliminary hearing; he was not given the opportunity to test Stanton's recollection and sift the conscience of the witness; nor was he given the opportunity, through counsel, to cross-examine Stanton comprehensively when Stanton gave the testimony which through the admitted transcript became the only evidence that could support the convictions in this case. Therefore, admission in evidence at petitioner's trial of the preliminary hearing transcript of Stanton's untested testimony deprived petitioner of rights se-

cured to him by the Sixth and Fourteenth Amendments to the federal constitution. Cf. *Flowers v. Ohio*, 564 F.2d 748 (6th Cir. 1977); *Government of Canal Zone v. P. (Pinto)*, 590 F.2d 1344 (5th Cir. 1979); *see People v. Simmons*, 36 N.Y.2d 126, 365 N.Y. S.2d 812, 325 N.E.2d 139 (1975). He is, accordingly, entitled to the issuance of a writ of habeas corpus granting him the relief for which he prays in his petition. An appropriate order will be entered, consistent with the views expressed in this Memorandum, and providing that the writ shall not issue for a period of 120 days in order to afford the State of Illinois the opportunity to initiate new trial proceedings. *See United States of America ex rel. Smith v. Rowe*, 618 F.2d 1204 (7th Cir., 1980).