**UNITED STATES of America ex rel. Melvin HAYWOOD, Petitioner-Appellee,**

v.

**Dennis WOLFF, Warden, Joliet Penitentiary, Respondent-Appellant.**

**No. 80–1565.**

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1981.

Decided Aug. 18, 1981.

As Corrected Aug. 20, 1981.

Neal B. Goodfriend, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

Sam Adam, Chicago, Ill., for petitioner-appellee.

Before SWYGERT, PELL, and BAUER, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment of the district court, 490 F.Supp. 1154, granting an Illinois state prisoner's petition for habeas corpus and ordering his retrial or release from custody within 120 days.[1] The principal issue presented is whether the introduction at trial of the preliminary hearing testimony of a deceased witness denied petitioner his constitutional right to confront the witnesses against him. We hold that it did not.

I

On July 2, 1972, Chicago Police Officer William Hinton was dispatched to investigate a shooting incident at an apartment building located at 1448 East 68th Street. Upon his arrival, Officer Hinton encountered Charles Stanton lying outside the building with a gunshot wound in his chest. After speaking briefly with Stanton, Hinton proceeded to a third-floor apartment where he discovered four other people who had also been shot. Three of the people, Lee Jackson, William Troop, and Melba Grate, had been shot in the head and died from their wounds. The fourth, Harry Daniels, had been shot in the leg, and both he and Stanton later recovered.

Shortly after undergoing surgery for his wounds, Stanton identified petitioner Melvin Haywood from a collection of photographs taken from the apartment as one of three men who had entered the apartment on July 2 and opened fire on the others. Based on his identification, a warrant was issued for Haywood's arrest. The warrant was not executed, however, until some two years later.

At the initial questioning following his arrest, Haywood first stated that his name was Reginald Moss and denied that he was at the apartment where the shooting occurred on July 2, 1972. When informed the police knew his true identity, he replied "Okay, then you know who I am, it's been a hard two years staying in front of you all." Upon further questioning, Haywood admitted that he had been at the apartment on the night in question, but denied having shot anyone. He stated that he was there when some guys came in "to take the place off." All of a sudden, these men, whom he had never seen before, pulled out their guns and started firing. Haywood stated that he also was wounded in the shooting, but managed to flee before police arrived.[2]

---

1. Judge Leighton ordered petitioner released on his own recognizance pending appeal. On review of that order this court imposed a $150,-000 bond with 10% cash deposit. On June 16, 1981, following oral argument in the case, the court on its own motion vacated its previous order and stayed the district court's order pending this decision.

2. Officer John Janda of the Chicago Police Department testified at trial that on July 2, 1972, he interviewed Haywood at St. Bernard's Hospital regarding a gunshot wound in his right leg. Haywood told him that he was shot from behind while walking down the street. Unaware of the triple homicide police were investigating at the time, Janda simply wrote up a report of the incident.

A preliminary hearing was held on July 11, 1974. At the hearing Charles Stanton positively identified Haywood as the person who had shot him and his girlfriend, Melba Grate, on July 2, 1972. Stanton testified he and Grate were at Lee Jackson's apartment that night with Jackson, Shirley Scott, and William Troop. He stated that Haywood and two other men arrived at the apartment sometime between 2:00 and 2:30 a. m. Shortly after the three men entered, someone hollered "Now," and shooting erupted. Stanton testified that Haywood shot him in the arm, and that he and Shirley Scott then ran to a back bedroom where he hid Scott in a closet and himself under a bed. From the bedroom he saw Haywood shoot Melba Grate in the head. Haywood then entered the bedroom and ordered Stanton to get up from behind the bed. As Stanton stood up, Haywood shot him in the stomach, and he fell back to the floor. Stanton testified that after hearing several more shots, he staggered to his feet and went into the living room where he saw Jackson, Troop, and Grate lying on the floor, each with a gunshot wound to the head. He then left the apartment to get help.[3]

On cross-examination, Haywood's attorney questioned Stanton at length about the events he observed on July 2, 1972, the circumstances under which he observed them, and his subsequent efforts to assist the police in their investigation. However, the presiding judge sustained the state's objections to several questions on the ground that they were beyond the scope of the preliminary hearing. As a result, counsel was prevented from asking Stanton his present address; whether he had seen a picture of Haywood since July 2, 1972;[4] whether he had described to the police the person who shot him and his girlfriend; what he had said to the police when they first arrived; what his physical condition was at that time; and whether he had testified in any prior proceeding concerning the events of July 2, 1972. Most of the objections were sustained on the ground that the question sought information contained in police reports and therefore went to discovery, an area beyond the scope of a preliminary hearing under Illinois law.[5]

After the hearing, the court entered a finding of probable cause and held the matter over to the grand jury. The grand jury returned nine indictments against Haywood charging him with the murders of Jackson, Troop, and Grate, and the attempted murder and aggravated battery against Stanton.

Unfortunately, Stanton did not live to testify at Haywood's trial. Sometime after the preliminary hearing, he died of causes which, according to the record, were unre-

---

3. Shirley Scott apparently disappeared after the shooting. She was not at the apartment when police arrived and, at Haywood's trial, her mother testified that she had not seen or heard from her daughter since July of 1972. Shortly after his arrest, Haywood was shown a photograph of Scott and asked if he knew who she was. He replied that it was "Lee Stone's old lady" and that "if I told you where she was, I would be hanging myself."

4. Despite the court's initial ruling sustaining the state's objection to this question, counsel later re-asked it and Stanton answered it in full. He explained that he had seen a photograph of Haywood on Jackson's dresser prior to July 2, 1972, and that he had originally identified Haywood as his assailant from that photo. He also described other photographs the police had shown him.

5. The general purpose of a preliminary hearing is to determine whether the crime charged has been committed and, if so, whether there is probable cause to believe that it was committed by the accused. *United States ex rel. Bonner v. Pate*, 430 F.2d 639, 641 (7th Cir. 1970), *cert. denied*, 401 U.S. 915, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971). Under Illinois law,

[C]ross-examination at a preliminary hearing is subject to the general rule that it may not extend beyond the scope of the direct examination and such further interrogation as is directed to show interest, bias, prejudice or motive of the witness to the extent that these factors are relevant to the question of probable cause.

*People v. Horton*, 65 Ill.2d 413, 416–417, 3 Ill. Dec. 436, 358 N.E.2d 1121 (1976). Illinois discovery rules governing release of police reports and other relevant information and material are "not operative prior to or in the course of any preliminary hearing." Supreme Court Rule 411, Ill.Rev.Stat. ch. 110A, § 411.

lated to the pending proceeding.[6] When the prosecution announced its intention to use Stanton's preliminary hearing testimony at trial in his place, the defense responded with two separate motions. The first challenged the use of Stanton's previous testimony on the ground that Haywood had been denied an adequate opportunity to cross-examine him at the hearing because of the presiding judge's strict application of state procedural rules limiting the scope of preliminary hearings to the issue of whether there is probable cause. The second motion sought to suppress Stanton's identification of Haywood at the hearing as the man who had shot Melba Grate and himself on the ground that it was the product of an unnecessarily suggestive confrontation and its admission at trial would deny Haywood his right to due process of law.

The trial court denied both motions. It found Haywood's opportunity to cross-examine Stanton at the preliminary hearing adequate, and also concluded that the confrontation at the preliminary hearing was not suggestive and, in any event, that Stanton's identification of Haywood had a prior independent origin and was therefore reliable.

At the trial the transcript of Stanton's preliminary hearing testimony, except for certain portions relating to evidentiary objections, was read to the jury over Haywood's renewed objections. The trial judge explained to the jury that the testimony was that of a witness who could not testify before them because he had died from causes unrelated to the incident in question.

The remainder of the state's case consisted primarily of testimony by several City of Chicago police officers who were involved in the investigation. One of the officers testified that four guns were recovered from the apartment on the night of the shooting. Three were .38 caliber revolvers and the fourth was a .25 caliber automatic. The parties stipulated that ballistic tests

performed by a crime laboratory technician revealed that the three bullets taken from the bodies' of Stanton, Grate, and Troop had all been fired from the same .25 caliber weapon, but that they had not been fired from the .25 caliber automatic found in the apartment. Another of the police officers testified as to Haywood's statements to the police following his arrest.

Despite its hearsay character, the state was also able to introduce through one of the police officers, Officer McKenna, Stanton's initial identification of Haywood from the collection of photographs shown him while he was still in the hospital.[7] On cross-examination, Officer McKenna further testified that, while in the hospital, Stanton had identified Harry Daniels and one Willie Bedgood from a second group of photographs as the other two men who had opened fire on the others. According to McKenna, Stanton had stated that Harry Daniels was the man that had jumped up just before the shooting began and hollered "Now." Defense counsel attempted to elicit from the officer whether the state had proceeded against either of the other two men identified by Stanton and, if so, what the outcome had been. In each instance, however, the state's objection on grounds of relevancy was sustained by the trial court.

The principal witness for the defense was Harry Daniels. Daniels testified that he had gone to Jackson's apartment with William Troop and that, when he arrived, Jackson and his wife were there along with Jackson's brother, Melba Grate, and Charles Stanton. Haywood arrived by himself sometime later. Daniels testified that he observed Stanton "snorting heroin," drinking and smoking marijuana during the evening, and that he appeared "mostly out of it."

Daniels stated that at one point he overheard Jackson tell someone over the telephone to bring him "a couple of spoons of

6. The exact cause of death does not appear in the record.

7. In his state court appeal, petitioner argued that the admission of this testimony was reversible error. The Illinois Appellate Court held that counsel had expressly waived this claim of error during trial. The record amply supports its holding.

heroin." Shortly thereafter, three men came into the apartment and, within minutes, began shooting. Daniels stated that people began "running all over" and that he was shot in the leg and fell on the floor. He stated that he saw Haywood during the shooting and that Haywood did not have a gun.

Lastly, Daniels testified that Stanton had identified him to the police as one of the participants in the shooting. He stated he was arrested and charged with three counts of murder, but was never brought to trial.

A Cook County jury returned verdicts of guilty on each of the charges against Haywood. Judgment was entered on the verdicts and Haywood was sentenced to concurrent prison terms of 100 to 200 years on each count of murder and 10 to 20 years on the attempted murder count, which for sentencing purposes was held to have merged with the aggravated battery.

Haywood appealed to the Illinois Appellate Court, which affirmed his conviction in *People v. Haywood*, 60 Ill.App.3d 236, 17 Ill.Dec. 329, 376 N.E.2d 328 (1st Dist. 1978). After leave to appeal was denied by the Illinois Supreme Court, and certiorari was denied by the United States Supreme Court, Haywood filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois.

The petition alleged three constitutional violations in the state court proceedings, any one of which was claimed to entitle Haywood to release from custody. The district court granted the petition, holding that the state's introduction of Stanton's preliminary hearing testimony into evidence against Haywood at his trial deprived him

of his right to confront the witnesses against him guaranteed by the Sixth and Fourteenth Amendments.[8] The court did not reach the other two grounds for relief alleged in the petition.[9]

## II

The Sixth Amendment's Confrontation Clause, made applicable to the states through the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This right has long been considered one of the most important safeguards essential to a fair trial. It affords the accused

> an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). So important is the right of confrontation as a means of exposing falsehood and error [10] that "its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process.'" *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), quoting *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).

Yet, despite its importance to a fair trial, the Confrontation Clause has never been construed literally to require the exclusion of all statements of persons who do not

**8.** The district court's opinion appears at 490 F.Supp. 1154.

**9.** The petition also alleged that Stanton's identification of Haywood as his assailant was inadmissible as the product of an unnecessarily suggestive confrontation and that the trial court's refusal to allow Haywood to cross-examine Officer McKenna about the outcome of the criminal proceedings against Daniels and Bedgood denied him his Sixth Amendment rights.

**10.** The right of cross-examination, a primary component of the more general right of confrontation, has been frequently referred to as "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970), quoting 5 J. Wigmore, Evidence § 1367 (3d ed. 1940).

appear at trial. Both state and federal rules of evidence recognize well-established exceptions to the general rule that hearsay is inadmissible at trial and, while the admission of statements under such exceptions has more than once been found to violate the Confrontation Clause, *see California v. Green*, 399 U.S. 149, 156–57, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970), the Court has never suggested that the Sixth Amendment was intended to exclude all hearsay. Such an interpretation has long been rejected as too extreme and inconsistent with the Framers' intent. *Mattox v. United States, supra.* The difficulty lies in determining when "considerations of public policy and the necessities of the case," *Mattox*, 156 U.S. at 243, 15 S.Ct. at 339, justify dispensing with confrontation at trial.

In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), a case also involving the introduction of the preliminary hearing testimony of an unavailable witness, the Supreme Court described a two-step approach to be used in making this determination:

> First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant.
>
> The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule." *Snyder v. Massachusetts*, 291 U.S. [97] at 107 [54 S.Ct. 330 at 332, 78 L.Ed. 674]. The principle recently was formulated in *Mancusi v. Stubbs*:

> The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra* [400 U.S. 74] at 89 [91 S.Ct. 210 at 219, 27 L.Ed.2d 213] and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green*, supra, at 161 [90 S.Ct. at 1936]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability.' 408 U.S. [204] at 213 [92 S.Ct. 2308 at 2313, 33 L.Ed.2d 293].

448 U.S. at 65–66, 100 S.Ct. at 2538–39 (citations omitted).

In the instant case, the first part of the Court's test is clearly satisfied. Because Stanton had died prior to Haywood's trial, he was obviously unavailable to testify. It is under the second aspect of the analysis that the issue in this case arises.

In *Roberts* the Court found the second part of the test satisfied because the defendant against whom the testimony was used had an adequate opportunity to cross-examine the witness at the preliminary hearing and his attorney had in fact availed himself of that opportunity. Based on this fact, the Court concluded that the witness' prior testimony bore sufficient "indicia of reliability," *Dutton, supra*, 400 U.S. at 89, 91 S.Ct. at 219, and afforded the trier of fact a satisfactory basis for evaluating its truth to justify its admission at trial. 448 U.S. at 73, 100 S.Ct. at 2543. Essentially, this was the same conclusion the Court had reached in *California v. Green, supra.*[11]

11. Although the language used in *Green* suggests "that the *opportunity* to cross-examine at the preliminary hearing—even absent actual cross-examination—satisfies the Confrontation Clause," the Court in *Roberts* pointed out that this reading went too far since "the record showed, and the Court recognized, [in *Green*,] that defense counsel in fact had cross-examined [the witness] at the earlier proceeding." 448 U.S. at 70, 100 S.Ct. at 2541. "Thus, Mr.

In the instant case, however, petitioner claims, and the district court found, that counsel was not afforded an adequate opportunity to cross-examine Stanton at the preliminary hearing. Because of the limited scope of preliminary hearings under Illinois law, and the presiding judge's strict application of that law in this case, the district court concluded that petitioner was prevented from adequately testing Stanton's recollection and sifting his conscience to satisfy the demands of the Confrontation Clause. It therefore held that the introduction in evidence of the transcript of the hearing deprived him of his rights under the Sixth and Fourteenth Amendments.

■ We think the district court erred in this determination. The cross-examination conducted by counsel, though less extensive than would have been allowed at trial, provided adequate indicia of reliability and, together with the other evidence introduced at trial, afforded the trier of fact a satisfactory basis for evaluating the truth of the testimony to justify admission of the transcript once Stanton became unavailable. The district court's conclusion that the prior testimony was not admissible is based, we believe, on a misunderstanding of the law.

■ In concluding that the introduction of Stanton's preliminary hearing testimony violated petitioner's confrontation rights under the Sixth and Fourteenth Amendments, the district court emphasized that counsel had been prevented at the hearing from asking Stanton his present address. On two occasions the Supreme Court has

found similar restrictions at trial to violate an accused's constitutional right of cross-examination. *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931).[12] Similarly, application of state rules of evidence which prevented a defendant from cross-examining a witness as to prior inconsistent statements was held to be a denial of due process in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Thus, had the objections to counsel's questions concerning Stanton's previous statements to the police been sustained at trial, it might well have been reversible error. The district court apparently concluded that because these restrictions on petitioner's right of cross-examination at the preliminary hearing would have been impermissible at trial, it necessarily followed that his opportunity to cross-examine at the prior hearing was insufficient to satisfy the Confrontation Clause.

■ This conclusion is incorrect. In upholding the introduction of an unavailable witness' preliminary hearing testimony, the Supreme Court has never said that the opportunity for cross-examination afforded at the preliminary hearing must be identical with that required at trial. To the contrary, the Court has specifically recognized that "[a] preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists for holding the accused for trial." *Barber v.*

Justice BRENNAN, writing in dissent, could conclude only that '[p]erhaps' 'the mere opportunity for face-to-face encounter [is] sufficient.'" *Id.*, quoting *Green*, 399 U.S. at 200, n.8, 90 S.Ct. at 1957 n.8 (Brennan, dissenting). Lower courts that have considered the question have generally concluded that the opportunity to cross-examine at the prior proceeding is sufficient. "The actual use then made of the opportunity becomes a matter of defense strategy, and deliberate trial tactics do not ordinarily exact constitutional protection." *Phillips v. Wyrick*, 558 F.2d 489, 496 (8th Cir. 1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978). *See also United States v. Amaya*, 533 F.2d 188 (5th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977);

*United States v. Zurosky*, 614 F.2d 779, 793 (1st Cir. 1979), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980); *Havey v. Kropp*, 458 F.2d 1054, 1057 (6th Cir. 1972).

12. The rationale for this holding was stated in *Alford*: "... The question 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed...." *Alford v. United States*, 282 U.S., at 693, 51 S.Ct. at 220.

*Page,* 390 U.S. 719, 725 (1968). To limit the admissibility of such testimony to those cases in which counsel for the defendant was erroneously permitted to exceed the proper scope of cross-examination at such a hearing would be unreasonable. The Court should not be presumed to have fashioned such a rule.

The district court is simply mistaken in its assertion that "on each occasion in which the Supreme Court has discussed the right to cross-examine as a predicate for using a preliminary hearing transcript as substantive evidence, it has said that there must be 'a complete and adequate opportunity to cross-examine,' *Pointer,* 380 U.S. 400, 407; or, there must be 'an opportunity, not only of testing the recollection [but of] sifting the conscience of the witness,' *Barber,* 390 U.S. 719, 721; or the record must show 'every opportunity to cross-examine ...,' *Green,* 399 U.S. 149, 165." 490 F.Supp. at 1163. Although the Court has found that there was in fact full and complete cross-examination at the preliminary hearing in those cases in which it has upheld the admission of such evidence at trial, *Ohio v. Roberts, supra; California v. Green, supra,* it has never said that either the opportunity to cross-examine, or the actual cross-examination conducted at the preliminary hearing, must be as full and complete as allowed at trial in order for testimony from such a proceeding to be admissible in the event the witness subsequently becomes unavailable.

On only one occasion has the Court found confrontation at the preliminary hearing constitutionally insufficient to permit the previous testimony of an unavailable witness to be used at trial, and in that case the accused had been without counsel at the time of the hearing and had made no attempt to cross-examine the witness on his own. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Perhaps just as significant in *Pointer,* though not mentioned as such in the Court's opinion, was the fact that the witness whose preliminary hearing testimony was introduced had simply moved to another state. In *Barber v. Page, supra,* decided three years later, the Court held that the fact a witness was incarcerated in a federal prison located in another state did not render him sufficiently "unavailable" to justify the denial of confrontation at trial.

Certainly, the need to use the prior testimony is much greater where, as here, the witness has not merely changed his place of living, but has ceased living altogether.[13] Under these circumstances, there is virtually nothing the state can do to produce the witness whose testimony it wishes to present. Where the remaining evidence is insufficient to support a finding of guilt beyond a reasonable doubt, the state is effectively barred from obtaining a conviction.

Of course, there is nothing wrong with the state being barred from obtaining a conviction where the only evidence it can produce, or evidence essential to its case, is so inherently unreliable that "there is 'a very substantial likelihood' that it is false." *Westen,* at 1190, quoting *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). To permit a jury even to consider such evidence has been found to be a denial of due process. *Neil v. Biggers, supra; Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). But the mere fact that Stanton's preliminary hearing testimony was not subjected to as extensive cross-examination as it could have been at trial does not render it inherently unreliable. Indeed, several

---

**13.** In his concurring opinion in *California v. Green, supra,* Justice Harlan suggested that the Confrontation Clause be read simply "to require the prosecution to *produce* any *available* witness whose declarations it seeks to use in a criminal trial." 399 U.S. at 174, 90 S.Ct. at 1943. Under this theory, where the witness is unavailable, his prior statement should be admissible, unless it is so untrustworthy that its introduction would constitute a denial of due process. 399 U.S. at 189, 90 S.Ct. at 1951. *See* Westen, The Future of Confrontation, 77 Mich. L.Rev. 1185 (1979) (hereinafter, cited as Westen). Although Justice Harlan subsequently rejected this theory in his concurring opinion in *Dutton v. Evans, supra,* 400 U.S. at 95, 91 S.Ct. at 222, a majority of the Court appears to have substantially adopted this approach in analyzing confrontation issues. *See Ohio v. Roberts,* 448 U.S. at 65–66, 100 S.Ct. at 2538–39.

courts have concluded that a deceased witness' grand jury testimony may be admissible, even though totally untested by cross-examination, if it is sufficiently corroborated by other evidence to assure the minimal reliability required.[14] *United States v. West*, 574 F.2d 1131, 1136–1137 (4th Cir. 1978); *United States v. Garner*, 574 F.2d 1141, 1144 (4th Cir.), *cert. denied sub nom. McKethan v. United States*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978).

■ The test for determining whether preliminary hearing testimony is admissible under the Confrontation Clause, as with all hearsay, is not whether there was an opportunity for full and complete cross-examination, but whether there are adequate indicia of reliability to justify its placement before the jury, even though there is no contemporaneous confrontation of the declarant. *Dutton v. Evans*, 400 U.S. at 89, 91 S.Ct. at 219; *Ohio v. Roberts*, 448 U.S. at 65–66, 100 S.Ct. at 2538–39. Stanton's preliminary hearing testimony meets this test. First, it was given under circumstances that were intended to impress upon him the importance of telling the truth. This was not a casual statement made in an informal setting where one might reasonably feel at liberty to exaggerate or color his version of an event. Stanton testified in open court under oath and subject to criminal penalties for perjury. His testimony was not about someone far removed from the proceedings; Haywood was seated directly before him as Stanton positively identified him as the man who had shot him and his girlfriend.

Furthermore, even though counsel's opportunity to cross-examine Stanton at the hearing may have been more limited than would be allowed at trial, it was more than adequate to allow him to determine precisely what Stanton claimed to know and the claimed basis for his knowledge. Counsel questioned Stanton about the lighting conditions in the apartment; the appearance of the other two men who arrived with Haywood; whether he had ever seen them before; where he was seated when the shooting broke out; whether anyone besides Haywood was carrying a gun; how many times he was shot and where; whether he had seen Haywood since that night; the clothes Haywood was wearing on the night of the shooting; his actions during and immediately after the shooting; his initial identification of Haywood from a picture he had previously seen in Jackson's apartment; his identification of the other men involved from a second group of pictures; and whether he actually saw anyone shoot Lee Jackson.

The questions defense counsel was prevented from asking Stanton at the preliminary hearing, for the most part, went to previous statements he had made concerning the events on July 2, 1972. Petitioner argues that had he been able to question Stanton about these statements at the preliminary hearing, he could have impeached his testimony by pointing out inconsistencies between what Stanton had said earlier and what he was now claiming.

14. This court has also found statements not subjected to cross-examination admissible under the Confrontation Clause where (1) it is clear the declarant actually made the statement in question, and (2) there is circumstantial evidence supporting its truth. *United States v. Blakey*, 607 F.2d 779, 786 (7th Cir. 1979). In the instant case the evidence shows that Haywood was present in the apartment at the time of the shooting, but fled immediately afterwards. His statement to the police, when finally arrested some two years later, that it had been difficult staying ahead of them and his initial use of an alias and denial of even having been present during the shooting all imply involvement other than as an innocent bystander. Similarly, the ballistics evidence showing that

Stanton and Melba Grate, as well as William Troop were shot with the same gun corroborates Stanton's testimony that he personally observed Haywood shoot Grate and himself. The fact that this gun was not found in the apartment implies that whoever used it fled before the police arrived. Although this evidence does provide some support for the truth of Stanton's testimony, it is far less than the "extraordinary corroboration of the grand jury testimony" held admissible in *United States v. West, supra. United States v. Garner*, 574 F.2d at 1143. For this reason, we do not rely on corroborating circumstances as the "indicia of reliability" necessary to justify admission of the prior testimony in this case.

Petitioner was not seriously harmed by his inability to question Stanton concerning these statements at the preliminary hearing. In fact, there were few genuine inconsistencies between Stanton's prior statements and preliminary hearing testimony. It appears Stanton had originally told police that the three men who had entered the apartment and began shooting were people from Gary, Indiana, whom he had seen "around." At the preliminary hearing, however, he testified that he had never seen Haywood before July 2, 1972. Although counsel claims that Haywood has never been a resident of Indiana, there appears to be no evidence of this fact contained in the record.[15] Thus, the only clear inconsistency would seem to be with the statement that Stanton had never seen Haywood before.

Stanton had also told police initially that it was Harry Daniels who stood up and shouted "Now" just before the shooting began. But at the preliminary hearing he testified that he didn't know who shouted "Now." Finally, it appears that at the trial of Willie Bedgood, whom Stanton had also identified as one of the participants in the shooting, Stanton had described the lighting in Jackson's apartment differently from the manner in which he described it at the preliminary hearing.

The statements containing these inconsistencies were introduced at Haywood's trial through the testimony of the police officers to whom they were given, and also the court reporter during the Bedgood trial. Because counsel was able to, and did, point out and emphasize to the jury these and other portions of the statements which he claimed to be inconsistent, it cannot be said that he was prevented from impeaching Stanton's testimony. Indeed, Haywood may well have benefited from the fact that Stanton was not present to explain what only appeared to be inconsistencies.[16]

In any event, the circumstances under which Stanton testified and the cross-examination that was allowed at the preliminary hearing provided sufficient indicia of the reliability of his testimony to justify consideration of it by the jury. When considered in conjunction with the other evidence presented, including Stanton's previous statements, the jury had a satisfactory basis for evaluating its truth. We therefore hold that the introduction of the transcript at trial did not deprive Haywood of his constitutional right to confront the witnesses against him. Accordingly, the judgment of the district court is reversed and the case remanded for proceedings consistent with this opinion.

SWYGERT, Senior Circuit Judge, dissenting.

I strongly disagree with the majority's conclusion that witness Stanton's testimony bore sufficient indicia of reliability to be introduced at trial without any cross-examination. The Government's entire case rested upon Stanton's testimony. Under such circumstances, a court must carefully examine its trustworthiness before permitting its use. Several factors that were ignored by the majority indicate that the testimony was quite unreliable. I would therefore affirm the judgment of the district court.

The Supreme Court's recent opinion in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), establishes the standards to be applied in determining the admissibility of testimony from a preliminary hearing when the witness is unavailable to testify at the trial. The Court declared, "Reflecting its underlying purpose to augment accurary in the fact-finding process by ensuring the defendant an effective means to test adverse evidence, the [Confrontation] Clause countenances only hearsay marked" by sufficient " 'indicia of reliability.' " *Id.* 65, 100 S.Ct. at 2538, quoting

---

**15.** Haywood's sister testified at trial that, during the summer of 1972, he lived with her in the City of Chicago. It does not follow from this fact, however, that he was not originally, or at some time, "from Gary, Indiana."

**16.** Haywood was similarly unharmed by his inability to ask Stanton where he lived at the preliminary hearing. Stanton's address was made known to him after the hearing and, to the extent it was relevant, he was free to introduce this fact at trial.

*Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970). These indicators "afford the trier of fact a satisfactory basis for evaluating the truth of the statement." *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970).[1] The majority discusses a number of factors that they consider to be such indicia of reliability, but their analysis constitutes only a partial analysis of the facts of this case. A court must do more than consider whether these factors exist. It must also examine whether there exist certain indicia of *unreliability.* This the majority failed to do.

There are several critical issues in this case that indicate that Stanton's testimony was too unreliable to be admitted without any cross-examination. Foremost is the fact that three other men whom the witness identified as co-perpetrators with the defendant of the murders were not convicted of the crimes. One was acquitted, and the two others were not prosecuted because police investigation showed that they were not involved in the crimes. These facts greatly impinge upon the reliability of the witness's testimony. If he was incorrect twice previously, it seems reasonable to conclude that a distinct possibility could exist that he may be wrong again. Stanton's credibility is further eroded when one considers that even though the witness testified that three men committed the murders, he has identified four different men. With such a past history for error, I am unable to find Stanton's testimony to be marked with such trustworthiness that it should be brought before the trier of fact without confrontation.

Evidence was also presented that the witness was under the influence of narcotics at the time of the crime. Harry Daniels, one of the witnesses for the defense, testified that Stanton and others were "snorting heroin" shortly before the murders and that the witness was "pretty much out of it."

At the preliminary hearing, Haywood's counsel was not permitted to question Stanton on his physical condition. I find it intolerable to accept these statements without some questioning concerning his ability accurately to identify and describe the events of the night in question. The witness had been incorrect three times before. By ignoring these issues and permitting the testimony to be admitted, the majority does not appear to be concerned with the existence of indicia of reliability.

The majority opinion points out several other inconsistencies in Stanton's testimony. Maj. op., *supra,* at 463–464. It concludes, however, that because Haywood's counsel was able to point out these inconsistencies to the jury, Haywood was thereby able to impeach Stanton's testimony without any prejudice from his absence.[2] This assertion is simply not correct. In judging the veracity of a statement, the trier of fact does not rely on the facts themselves. The jury must also consider the witness's demeanor, his reaction to point blank questions, and the manner in which he speaks. For these reasons, the Confrontation Clause affords an accused

> an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed.2d 409 (1895). It is quite different for a jury to hear impeaching evidence from defense counsel, as occurred here, and for a jury to see how a witness reacts when confronted with that evidence. Failure for this opportunity to occur calls into question the "integrity of the fact finding process." *Chambers v. Mississippi,* 410 U.S. 285, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), quoting *Berger*

---

1. *See also Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972); *Ohio v. Roberts, supra,* 448 U.S. at 65–66, 100 S.Ct. at 2538–39.

2. The majority even makes the remarkable statement that Haywood may have been helped by Stanton's absence. Maj. op., *supra,* p. 464.

*v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).

Here the defendant did not have the opportunity to expose falsehood in front of the trier of fact. Especially in light of Stanton's unquestionably poor past record of veracity and his intoxication from heroin on the evening in question, I find it grossly unfair for the defendant to be convicted solely on this evidence.

Our criminal justice system, through the Constitution's guarantee of the right of a defendant to confront a witness against him, seeks to ensure that no innocent man will be deprived of his freedom. Although the Supreme Court has permitted the jury to consider unconfronted testimony when sufficient indicia of reliability exists, extreme care must be taken. Here I am convinced that this testimony does not meet that high standard. I am consequently concerned that an innocent man might have been sentenced to prison. I would therefore affirm the district court.