UNITED STATES of America ex rel. Levester BELL and Sherman Gibson, Petitioners–Appellants,

v.

DIRECTOR, DEPARTMENT OF CORRECTIONS, STATE OF ILLINOIS, Respondent–Appellee.

No. 86–2772.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1987.

Decided May 20, 1988.

James H. Reddy, Public Defender of Cook County, Chicago, Ill., for petitioners-appellants.

Marcia L. Friedl, Office of Illinois Atty. Gen., Chicago, Ill., for respondent-appellee.

Before BAUER, Chief Circuit Judge, POSNER, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Petitioners Bell and Gibson were convicted of rape, deviant sexual assault, attempted deviant sexual assault, and robbery. Theirs was a bench trial in the Circuit Court of Cook County, Illinois. The convictions were affirmed by the Illinois Appellate Court. *People v. Bell,* 132 Ill.App.3d 354, 87 Ill.Dec. 247, 476 N.E.2d 1239 (1st Dist.1985). Justice Pincham dissented. The Illinois Supreme Court denied leave to appeal, 106 Ill.2d 556 (1985), and the United States Supreme Court denied *certiorari, Bell v. Illinois,* 474 U.S. 852, 106 S.Ct. 153, 88 L.Ed.2d 127 (1985). Petitioners thereafter sought a writ of *habeas corpus* in the federal district court. The petition was denied and this appeal followed. We AFFIRM.

The victim, Rochelle Johnson, identified petitioners to police officers shortly after the alleged attack. She testified at a preliminary hearing on July 1, 1982, the next day, again identifying them. She was cross-examined by defense counsel appointed shortly before the hearing. Trial occurred June 22, 1983. Ms. Johnson had

died in April of unrelated causes and because she was unavailable, the transcript of her testimony at preliminary hearing was received in evidence.

Petitioners contend that this use of her testimony denied their rights under the Confrontation Clause of the Sixth Amendment.

In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) the Supreme Court held that once a declarant has been shown to be unavailable as a witness, the test whether the use against a defendant of declarant's earlier statement violates the Confrontation Clause is whether the statement bears adequate "indicia of reliability."

The Court said:

The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule." *Snyder v. Massachusetts,* 291 U.S. [97], at 107 [54 S.Ct. 330 at 332, 78 L.Ed. 674]. The principle recently was formulated in *Mancusi v. Stubbs:*

"The focus of the Court's concern has been to ensure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra* [400 U.S. 74] at 89 [91 S.Ct. 210 at 219, 27 L.Ed.2d 213] and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra* [399 U.S. 149], at 161 [90 S.Ct. 1930 at 1936, 26 L.Ed.2d 489]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability'." 408 U.S. [204] at 213 [92 S.Ct. 2308 at 2313, 33 L.Ed.2d 293].

448 U.S. at 65–66, 100 S.Ct. at 2539.

Applying this test to use at trial of testimony from a preliminary hearing, the *Roberts* Court found no violation of the Confrontation Clause where defense counsel had tested such testimony at preliminary with the equivalent of "significant" cross-examination. 448 U.S. at 70, 100 S.Ct. at 2541. *See also California v. Green,* 399 U.S. 149, 166, 90 S.Ct. 1930, 1939, 26 L.Ed.2d 489 (1970) ("In the present case, respondent's counsel does not appear to have been significantly limited in any way in the scope or nature of his cross-examination of the witness Porter at the preliminary hearing.").

This court has pointed out, in applying *Roberts* to testimony on preliminary examination where, as here, objections to some of the cross-examiner's questions had been sustained:

The test for determining whether preliminary hearing testimony is admissible under the Confrontation Clause, as with all hearsay, is not whether there was an opportunity for full and complete cross-examination, but whether there are adequate indicia of reliability to justify its placement before the jury, even though there is no contemporaneous confrontation of the declarant.

*United States ex rel. Haywood v. Wolff,* 658 F.2d 455, 463 (7th Cir.), *cert. denied,* 454 U.S. 1088, 102 S.Ct. 649, 70 L.Ed.2d 625 (1981).

On direct examination in the case before us, Ms. Johnson testified that at about 3:15 AM June 30, 1982 she had been walking on Halsted Street. She identified petitioners as two men who walked behind her and grabbed her arms. They took her to a school park. She struggled while they removed her pants. She described the order of the sexual assaults: anal by "the fat guy" (pointing to Gibson); a demand for oral sex by Bell while Gibson pulled her hair back; vaginal by Bell, "the skinny guy;" vaginal by Gibson; and anal by Bell. Gibson took four dollars from her coat

pocket, took her "blue bag and he put his barbeque in it," and took her Avon kit.

We do not hesitate to characterize the cross-examination of Ms. Johnson as "significant." It fills twenty pages of transcript. Under cross-examination, she testified about the time of the event—the presence of street lighting and lighting in a field house in the park—her observation of the attackers' faces—whether she had seen them before—the extent of any conversation—her resistence—her state of mind—the conduct of each man during the time she was with them—the exact language used by Bell in demanding oral sex. She testified she did not scream until the assaults in the park. She did not see anybody else on the street, nor any car until, after the men left, she saw a police car coming and ran to it. Neither man had a weapon, and they did not hit her, but Gibson pulled her hair. She was not cut or bruised and her clothes were not torn.

Ms. Johnson admitted that she did not really know where the school park was—that she could not read street signs and could only read "little words that I understand like dog, cat and things like that"—she was unsure of the distance and the time it took to walk from the place where she was accosted to the school park—that in her testimony describing one assault she had used the word "back" and then referred to her "anus"—the State's Attorney had told her to use that word—she did not really know what "anus" meant. She did know what a vagina was, however, and the State's Attorney did not tell her to use that word. She emphatically denied several times that she had first pointed out two other men as the attackers. A portion of one denial is quoted by the Illinois Appellate Court, 87 Ill.Dec. at 249, 476 N.E.2d at 1241.[1]

The judge conducting the preliminary sustained objections to several questions asked in cross-examination. In particular petitioners rely upon rulings in two areas as significant limitations upon cross-examination:

(a) After Ms. Johnson, who was 24, indicated her very limited ability to read, defense counsel asked whether she went to school and whether she had been in any special classes. Objections to these questions were sustained. Although exploration of her mental and educational limitations would have been appropriate at trial, it is not surprising that the presiding judge considered it unnecessary on preliminary, with its more limited function. *See Haywood*, 658 F.2d at 461.

In any event, Ms. Johnson's limitations were fully explored at trial, and it seems unlikely that her answers to questions along this line would have added anything. The testimony of her mother and the stipulated testimony of a physician and psychologist are summarized at 87 Ill.Dec. at 250–52, 476 N.E.2d at 1242–44. The facts related, including that she had been considered slightly retarded; that tests indicated she was in the dull normal range; that she was able to travel to her work; that medication was prescribed for her epilepsy; and that she had had a recent lapse in medication which may have affected her, were before the trial judge when he found, pre-trial, that she was competent to testify, and when he considered the credibility of her testimony in finding petitioners guilty.

(b) Defense counsel asked, "What were the men wearing?" An objection was sustained.

This point raises greater concern because the question would at least test recall of a circumstance bearing upon her identification. It would seem an appropriate question at a preliminary examination notwithstanding the narrowness of the issue of probable cause. By hindsight petitioners indicate how her answer might have had

---

1. The transcript of Ms. Johnson's testimony at preliminary is in the record in this court, but there is only a portion of the trial transcript. The district judge referred in his decision to the absence of the entire transcript. He stated that both sides represented that the transcripts on file would be sufficient to decide the matter and that petitioners do not object to the summary of other testimony in the opinion of the Illinois Appellate Court. We have also relied on that summary.

significance at trial, where the question would clearly have been appropriate.

It was shown that there was a discrepancy between the description of clothing broadcast by Officer Sarabia before the arrest and the description of clothing attributed to Ms. Johnson in Sarabia's report. Sarabia was the officer from whom Ms. Johnson got help, and who shortly thereafter arrested petitioners. Petitioners suggest that the broadcast description was what Ms. Johnson told Sarabia initially, and that the description in the report resulted from Sarabia's observation of petitioners when arrested. As to one individual there is no substantial difference. The broadcast said, "neat black suit or black jacket." The report said, "black jacket that was neat looking and Levis." There is a difference as to the other individual. The broadcast said, "black jacket with brown pants," the report, "maroon jacket, grey slacks." Of course, we do not know what answer Ms. Johnson would have given the day after both the assault and the arrest. In any event the discrepancy between the two descriptions was fully argued to the trial judge before he made his finding of guilt.

Even though the cross-examination was restricted more narrowly than it would have been at trial, the ultimate test, as held in *Haywood,* is "whether there are adequate indicia of reliability to justify its placement before the jury, even though there is no contemporaneous confrontation of the declarant." 658 F.2d at 463.

The Johnson testimony here carries the same indicia of reliability as in *Haywood,* i.e., testimony in open court under oath and subject to criminal penalties for perjury, in the immediate presence of the accused, and with cross-examination adequate for a determination of what Ms. Johnson claimed to know and the claimed basis for her knowledge. 658 F.2d at 463.

This court has held that admission of grand jury testimony of an unavailable witness, where, of course, there had been no cross-examination, did not violate the Confrontation Clause where substantially corroborated by other independent evidence.

*U.S. v. Guinan,* 836 F.2d 350, 358 (7th Cir.1988).

In various respects, Ms. Johnson's testimony was corroborated by other evidence:

(1) A vaginal smear tested positively for the presence of semen.

(2) Ms. Johnson testified that Gibson took her blue bag and put his barbecue in it. Officer Sarabia testified at trial, and petitioners admitted, that when petitioners were arrested Gibson was carrying a blue Woolworth's bag containing barbecued ribs. Sarabia testified that at the time of the arrest Ms. Johnson told him, before she had seen the bag taken from Gibson, that her bag had been from Woolworth's.

(3) Ms. Johnson testified that Gibson also took her Avon kit. (Her mother testified that she had worked as an Avon sales representative.) Several packets of Avon products were found on the floor of the squadrol in which petitioners had been transported to the police station.

(4) Officer Sarabia testified that after Ms. Johnson had come screaming to his squad car, he and his partner stopped two men but Ms. Johnson immediately stated that they were not the offenders. Shortly thereafter, Ms. Johnson pointed out petitioners as the two who had raped her.

(5) Ms. Johnson testified that Gibson took four dollars from her. At the time of arrest, Bell had five one dollar bills.

We conclude that the Johnson testimony at preliminary fulfilled the *Roberts* "indicia of reliability" test notwithstanding the fact that the scope of the permitted cross-examination was narrower than it would have been at trial.

The judgment is AFFIRMED.